# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. P. HATCHETT, Minor.

UNPUBLISHED
May 10, 2018

No. 338968
Macomb Circuit Court
Family Division
LC No. 2017-000122-NA

Before: CAMERON, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

The circuit court followed respondent-father's wishes and terminated his parental rights to infant JPH, who is respondent's legal, but not biological, child. Despite the voluntary nature of the termination, respondent now appeals, claiming that he was denied the effective assistance of counsel and that termination was not in JPH's best interests. We affirm.

I

Respondent's wife conceived and gave birth to JPH while respondent was in prison. There is no question that respondent is not JPH's biological father. Respondent was still the child's legal father, however, by virtue of his marriage at all relevant times to JPH's mother. See *In re KH*, 469 Mich 621, 634; 677 NW2d 800 (2004). The Department of Health and Human Services (DHHS) took JPH directly into care after the child's birth and sought termination of respondent's parental rights in the initial petition.

At the court's second hearing, respondent voluntarily relinquished his parental rights to JPH. The court asked a litany of questions to ensure that respondent understood his rights and what he was giving up. Respondent indicated that he fully understood and was acting of his own free will. Respondent reiterated that he was not JPH's biological father, although he was married to the child's mother and was the child's legal father. The court inquired whether respondent "had enough time to discuss this [with his attorney] and make a decision," and respondent replied that he had "[o]odles of time." Respondent further indicated that termination of his parental rights would be in JPH's best interests because he was "[c]urrently incarcerated. I have five more years to do and I am not the biological father." By giving up his rights, respondent characterized, "It means I ain't the daddy." The court subsequently entered a termination order.

-1-

II

Respondent now claims that his attorney took "the 'easy' way out" and should have secured a DNA test to prove respondent's claim that he is not JPH's biological father. Respondent further contends that counsel should have conducted discovery, interviewed witnesses, consulted experts, and met longer with respondent to get a better " 'handle' on the file."

We are at a loss to understand why any of these actions would have been required in this case. Respondent was JPH's "parent" and "father" for purposes of the child protective proceedings as respondent was married to JPH's mother at the time of conception and birth. MCR 3.903(A)(7)(a), (18). It was of no consequence that respondent is not also JPH's biological father. To place JPH in a safe and permanent home, respondent's rights as the child's *legal* father still had to be addressed and, if deemed necessary under MCL 712A.19b(3), terminated. Respondent voluntarily relinquished his rights as JPH's legal father and he does not claim he wants his parental rights restored. Accordingly, respondent has not established that counsel's performance was constitutionally ineffective or that he was in any way prejudiced. See *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

III

Respondent further contends that the circuit court improperly accepted his admission that termination was in JPH's best interests. His appellate argument is confusing at best.

Respondent contends within his best-interests challenge that the court should not have terminated his parental rights because it "never went through the statutory grounds" supporting termination. "[A] respondent can consent to termination of his parental rights under the juvenile code, in which case the judge need not announce a statutory basis for it." *In re Toler*, 193 Mich App 474, 477; 484 NW2d 672 (1992). In any event, respondent admitted the grounds stated in the termination petition, which would encompass the statutory factors cited by the DHHS.

Respondent further asserts that he did not clearly waive his rights and admit that termination of his parental rights was in JPH's best interests. Respondent argues that when the court first asked him why he believed terminating his parental rights would be in the child's best interests, his answer was marked "indiscernible." This is a mischaracterization of the record. Respondent immediately told the court that termination of his parental rights was in JPH's best interests because he would be incarcerated for five more years and he was not the child's biological father. The colloquy continued:

> *The Court*. And please tell me in your own words what it means to release your parental rights and what you will be giving up?
>
> *Legal Father*. (Indiscernible).
>
> *The Court*. You can make it as simple as you choose?
>
> *Legal Father*. It means I ain't the daddy.

-2-

The "indiscernible" portion was likely hesitation on respondent's part, which was allayed by the court's further guidance. This slight pause in the proceeding does not render respondent's relinquishment of his parental rights involuntary.

We affirm.

/s/ Thomas C. Cameron
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher